**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUPERT CALVIN BELL and KYLE T. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MAPLEWOOD, *et al.*,<br><br>Defendants. | Case No. 2:19-cv-12980 (BRM) (JSA)<br><br>Case No. 2:20-cv-2504 (BRM) (JSA)<br><br>**OPINION** |
| RUPERT CALVIN BELL and KYLE T. NELSON,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MAPLEWOOD, *et al.*,<br><br>Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are two Motions to Dismiss in the following cases: (1) *Bell, et al. v. Township of Maplewood, et al.*, Civ. A. No. 19-12980 ("*Bell I*") and (2) *Bell, et al. v. Township of Maplewood, et al.*, Civ. A. No. 20-2504 ("*Bell II*").[1] The first Motion to Dismiss was filed in *Bell I* by Defendants Township of Maplewood (the "Township"), Nancy Adams ("Adams"), Sonia

---

[1] In this Opinion, to distinguish between *Bell I* and *Bell II*, the Court will include the appropriate case name when citing to the record.

Alves-Viveiros ("Alves-Viveiros"), Victor DeLuca ("DeLuca"), Dean DeLucia ("DeLucia"),[2] Gregory Lembrick ("Lembrick"), Joseph Manning ("Manning"), and Frank McGehee ("McGehee") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Bell I*, ECF No. 56.) Plaintiffs Rupert Calvin Bell ("Bell") and Kyle T. Nelson ("Nelson") (collectively, "Plaintiffs") opposed (*Bell I*, ECF No. 57), and Defendants replied (*Bell I*, ECF No. 60). The second Motion to Dismiss was filed in *Bell II* by Defendants pursuant to Rule 12(b)(6). (*Bell II*, ECF No. 30.) Plaintiffs opposed (*Bell II*, ECF No. 35), and Defendants replied (*Bell II*, ECF No. 33). Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Court *sua sponte* **CONSOLIDATES** the *Bell I* and *Bell II* cases and **GRANTS** Defendants' Motions to Dismiss. (*Bell I*, ECF No. 56; *Bell II*, ECF No. 30.)

## I.   BACKGROUND

This matter has a tortured and complicated procedural history that encompasses two separately filed complaints. For the purposes of clarity, the Court will address that history first.

### A.   Procedural History

On May 28, 2019, Plaintiffs filed the *Bell I* Complaint (the "*Bell I* Original Complaint") against the Township, DeLuca, Alves-Viveiros, Adams, DeLucia, Lembrick, McGehee, and unknown individuals (the "*Bell I* Defendants"). (*See generally Bell I*, ECF No. 1.) The *Bell I* Original Complaint set forth the following causes of action: (1) violations of Article I, Paragraphs 1, 2, 5, 7, and 18 of the New Jersey Constitution; (2) violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1981, 1983,

---

[2] Plaintiffs originally referred to DeLucia as Dean Dafis. (*Bell I*, ECF No. 1.) The parties now, however, refer to him as DeLucia. (*See, e.g.*, *Bell I*, ECF Nos. 37, 56; *Bell II*, ECF Nos. 5, 30.) Throughout this Opinion, the Court will also refer to him as DeLucia.

1985, 1986, and 1988; (3) violation of N.J. Stat. Ann. § 40A:9-6; (4) violation of N.J. Stat. Ann. § 10:6-2(c); (5) violations of N.J. Stat. Ann. §§ 10:1-2, 10:5.4, 10:5-1, 10:5-2(f), and 10:5-12(a), (d), (e), and (f); and (6) violation of the implied covenant of good faith and fair dealing. (*See generally id.* at 18–29.) On August 6, 2019, the *Bell I* Defendants moved for an extension of time to file their answer or otherwise respond to the *Bell I* Original Complaint, as well as for sanctions against Plaintiffs. (*Bell I*, ECF No. 5.) On August 12 and 15, 2019, Plaintiffs filed requests for an entry of default against the *Bell I* Defendants. (*Bell I*, ECF Nos. 6, 9.) On August 23, 2019, the Court entered an Order granting the *Bell I* Defendants' request for an extension of time to answer or otherwise respond, denying their request for the imposition of sanctions, and denying as moot Plaintiffs' requests for an entry of default. (*Bell I*, ECF No. 11.)

On September 17, 2019, the *Bell I* Defendants filed a Motion to Partially Dismiss the *Bell I* Original Complaint pursuant to Rule 12(b)(6). (*Bell I*, ECF No. 13.) Plaintiffs opposed (*Bell I*, ECF No. 15), and the *Bell I* Defendants replied (*Bell I*, ECF No. 18). On October 18, 2019, Plaintiffs filed an amended complaint against Defendants. (*Bell I*, ECF No. 21.) However, on October 22, 2019, the Honorable Joseph A. Dickson, U.S.M.J. entered an Order outlining the deficiencies in Plaintiffs' amended complaint and instructed Plaintiffs to submit a proper motion to amend and accompanying amended complaint by November 1, 2019.[3] (*Bell I*, ECF No. 22.)

On November 4, 2019, Plaintiffs filed a Motion for Leave to Supplement and Amend their Complaint. (*Bell I*, ECF No. 23.) The *Bell I* Defendants opposed Plaintiffs' Motion (*Bell I*, ECF No. 26.) On November 20, 2019, Judge Dickson held "it remains unclear what changes Plaintiffs seek to make to their original Complaint." (*Bell I*, ECF No. 27 at 2.) Unable to discern such

---

[3] Plaintiffs failed to meet the requirements of Local Civil Rules 7.1(d)(1) and 15.1(a)(2) by filing "neither a brief in support of the motion to amend, nor a version of the proposed Amended Complaint that clearly indicates what material is to be deleted or added." (*Bell I*, ECF No. 22.)

changes, Judge Dickson held "the Court and the parties cannot effectively evaluate the sufficiency of Plaintiffs' proposed amended pleading." (*Id.*) Rather than deny Plaintiffs' Motion "solely on procedural grounds," Judge Dickson instructed Plaintiffs to refile their Motion, in accordance with Local Civil Rules 7.1 and 15.1, by December 3, 2019. (*Id.* at 2–3.) Plaintiffs' refiling deadline was subsequently extended to January 3, 2020. (*Bell I*, ECF No. 31.) On January 3, 2020, Plaintiffs filed another Motion to Amend their Complaint. (*Bell I*, ECF No. 32.) The *Bell I* Defendants opposed Plaintiffs' Motion. (*Bell I*, ECF No. 33.) On March 9, 2020, Plaintiffs filed their amended complaint. (*Bell I*, ECF No. 35.) On March 10, 2020, however, Judge Dickson held the amended complaint violated Federal Rule of Civil Procedure 15(a) and Local Civil Rule 15.1 and, accordingly, struck it from the docket. (*Bell I*, ECF No. 36.)

On March 6, 2020, Plaintiffs filed an additional complaint (the "*Bell II* Original Complaint") against Defendants under the *Bell II* case number. (*See generally Bell II*, ECF No. 1.) The *Bell II* Original Complaint set forth the same causes of action as the *Bell I* Original Complaint (*see id.* at 34–44), and also set forth: (1) an additional claim for breach of the implied covenant of good faith and fair dealing against all Defendants except Manning; (2) an additional claim for breach of the implied covenant of good faith and fair dealing for casting Plaintiffs in a false light; (3) additional claims for breach of the implied covenant of good faith and fair dealing for interfering with Plaintiffs' beneficial position, false light, and invasion of privacy; and (4) wrongful termination (*id.* at 44–65). On March 18, 2020, Plaintiffs filed, as of right, an Amended Complaint in *Bell II* (the "*Bell II* Amended Complaint"), along with a Motion to Consolidate the *Bell I* and *Bell II* cases. (*Bell II*, ECF No. 5.) The *Bell II* Amended Complaint set forth the same causes of action as the *Bell II* Original Complaint, and also set forth additional state law causes of action for disparate treatment, retaliation, hostile work environment, and wrongful termination. (*Bell II*, ECF No. 5 at 66–86.)

Also on March 18, 2020, in *Bell I*, Plaintiffs filed a proposed amended complaint (the "*Bell I* Proposed AC"). (ECF No. 37.) The *Bell I* Proposed AC set forth the same causes of action as the *Bell I* Original Complaint, as well as: (1) an additional claim for breach of the implied covenant of good faith and fair dealing against all Defendants except Manning; (2) an additional claim for breach of the implied covenant of good faith and fair dealing for casting Plaintiffs in a false light; (3) additional claims for breach of the implied covenant of good faith and fair dealing for interfering with Plaintiffs' beneficial position, false light, and invasion of privacy; and (4) wrongful termination. (*Id.* at 44–65.) The *Bell I* Proposed AC, therefore, is identical to the *Bell II* Original Complaint. (*Compare Bell I*, ECF No. 37, *with Bell II*, ECF No. 1.) Plaintiff conceded to this fact during an October 22, 2020 status conference with the Court. (*See Bell II*, ECF No. 23 at 1.)

In *Bell I*, Plaintiffs also sought consolidation of the cases. (*See Bell I*, ECF Nos. 37-4.) In support of consolidation, Plaintiffs asserted "Defendants['] actions were coming so quickly one behind the other, that it became extremely difficult to keep up with them." (*Id.* at 2; *Bell II*, ECF No. 5-3 at 2.) Accordingly, Plaintiffs maintained consolidation "was the best procedure to have a clean up-to-date Complaint to include the previous Amendments with the new allegations." (*Id.*)[4]

On October 6, 2020, Plaintiffs filed Motions for Default Judgment in both cases. (*Bell I*, ECF No. 44; *Bell II*, ECF No. 16.) On October 22, 2020, Judge Dickson held a status conference with the parties. (*Bell I*, ECF No. 46; *Bell II*, ECF No. 18.) At the status conference, the parties agreed that a single lawsuit should exist for this dispute. (*Bell I*, ECF No. 49 at 2; *Bell II*, ECF No. 23 at 2.) On October 29, 2020, Judge Dickson entered an Order directing Defendants to submit a status letter indicating whether potential statute of limitations issues exist in *Bell II* that would

---

[4] Plaintiffs' identical consolidation arguments were filed in both cases. (*See generally Bell I*, ECF No. 37-4; *Bell II*, ECF No. 5-3.)

preclude the consolidation of the cases into one operative complaint. (*Id.*) The Order also indicated that "should the . . . status letter indicate that a Statute of Limitations issue exists in *Bell II*, then the Court will convene a hearing to resolve the issue of one operative complaint together with a process for addressing the statute of limitations issue." (*Id.*) Finally, the Order denied without prejudice the Motions for Default Judgment in both cases. (*Id.*) On November 5, 2020, Defendants submitted correspondence to the Court indicating "there may be arguments that claims related to [certain] incidents would be barred on statute of limitations grounds if *Bell II* became the operative complaint." (*Bell I*, ECF No. 50 at 1; *Bell II*, ECF No. 24 at 1.) It does not appear that a subsequent hearing was conducted to resolve these issues.

On December 22, 2020, Defendants filed identical Motions to Dismiss pursuant to Rule 12(b)(6) in *Bell I* and *Bell II*. (*See Bell I*, ECF No. 56; *Bell II*, ECF No. 30.) Importantly, Defendants' Motions to Dismiss addressed the *Bell II* Amended Complaint. (*See Bell I*, ECF No. 56-1 at 1 n.1; *Bell II*, ECF No. 30-1 at 1 n.1.) On January 5, 2021, Plaintiffs filed opposition in *Bell I*. (*Bell I*, ECF No. 57.) The opposition in *Bell I* was later filed in *Bell II* on May 11, 2021. (*Bell II*, ECF No. 35.) On January 12, 2021, Defendants replied. (*Bell I*, ECF No. 60; *Bell II*, ECF No. 33.)

B.     **Parties**[5]

At times relevant to these matters, Bell was Director of the Township's Department of Public Works ("DPW"). (*See Bell II*, ECF No. 5 at 11 ¶ 34;[6] *see also Bell II*, ECF No. 1-1 at 12.)

---

[5] Because *Bell I* and *Bell II* involve similar amended complaints and allegations, the Court will refer only to the *Bell II* Amended Complaint when reciting the facts of this matter. (*See generally Bell II*, ECF No. 5.)

[6] Plaintiffs' Amended Complaints restart paragraph numbers upon each new section. (*See generally Bell II*, ECF No. 5.) The Court, therefore, will refer to both the page and paragraph number when citing to the Amended Complaints.

Nelson held the position of Assistant to the Director of the DPW. (*See Bell II*, ECF No. 5 at 10 ¶ 27.) Adams was a Township Deputy Mayor and Public Works Liaison. (*See id.* at 5 ¶ 5.) McGehee was a Township Deputy Mayor. (*See id.* at 61 ¶ 17.) DeLucia was a union representative for the United Construction Traded and Industrial Employee Union. (*See id.* at 52 ¶ 2.) Lembrick was a Township Council member.[7] (*Id.* at 3 ¶ 2.) Alves-Viveiros and Joseph Manning were Township Business Administrators. (*Id.* at 3 ¶ 3.) Finally, DeLuca was the Township's mayor. (*Id.*)

    **C.    Factual Background**

    For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaints as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

    Plaintiffs' Amended Complaints are sprawling and inartfully-pled recitations of purported incidents of workplace harassment, discrimination, and retaliation in the Township's DPW. (*See generally Bell II*, ECF No. 5.) Plaintiffs first detail an April 10, 2017 meeting during which Bell informed DPW employee Anthony Stella ("Stella") he was "to take a class that would allow him to learn the operations of [the] HVAC system in one of the buildings." (*Id.* at 4 ¶ 3.) Stella "went into a tirade stating how he would not be going to the class or doing the job." (*Id.*) Bell then issued a written reprimand to Stella for insubordination. (*Id.*) Bell subsequently received an email from Manning stating Bell "cannot unilaterally assign this work to anyone who is not interested in doing it." (*Id.* at 5 ¶ 4.) Bell responded to this email by detailing "several questionable incidents and practices within the [DPW] department." (*Id.* at 6 ¶ 6.) Although Manning, Adams, and DeLuca were copied on this email, Bell did not receive a response. (*Id.*) Bell received three grievances

---

[7] Plaintiffs also refer to Adams, DeLucia, and McGehee as Township Council members throughout the Opinion. (*See, e.g.*, *id.* at 3 ¶ 2; *id.* at 33 ¶ 2.)

from DeLucia on behalf of Stella concerning this incident. (*Id.* at 6 ¶¶ 7–9.) Manning ultimately rendered a decision on Stella's grievances that expunged Bell's reprimand from Stella's file. (*Id.* at 7 ¶ 12.)

Next, Plaintiffs describe an incident in which Bell was informed by Cesare Riccardi, a white DPW assistant foreman, that Lee McEvoy, a white DPW employee, stated he would kill Marcos Alvarado, a Hispanic DPW employee. (*Id.* at 7 ¶ 13.) Bell subsequently met with Manning and suggested McEvoy be suspended five days without pay. (*Id.* at 7 ¶ 14.) Manning, however, "recommended a three-day suspension without pay, which would be taken at the convenience of Lee McEvoy." (*Id.* at 8 ¶ 15.) In November 2017, Eric Grow, a white DPW employee, accused Alvarado "of 'bullying and terrorizing' him since they were both hired three years ago." (*Id.* at 8 ¶ 16.) Bell interviewed Grow, Alvarado, and Riccardi, their immediate supervisor, but found Grow "to be completely not credible." (*Id.*) Bell, however, was copied on a letter from DeLucia to Manning accusing Bell of "bullying a Union Representative out of the meeting with" Grow. (*Id.* at 8 ¶ 17.)

Bell subsequently received several grievances and complaints (*see generally id.* at 8–9 ¶¶ 18–21), and, in December 2017, received a notice that the Township Council would be discussing his future employment (*id.* at 9 ¶ 22). Following this notice, Bell's "counsel appeared before [the] Township Council and suggested that the treatment being given to Mr. Bell was disparate" (*id.* at 9 ¶ 23), as Bell and Nelson, both black males, and Juan Uribe, a Hispanic Township employee, were the only department heads who had received such notices (*id.* at 9 ¶¶ 22, 24).

In addition to the notices, Plaintiffs were also informed that Bell, as Assistant to the DPW Director, would no longer be second-in-command at the DPW and, instead, that he should report to Riccardi. (*Id.* at 10 ¶ 27.) "Thus, the position previously held by Damien [Serafin]," a white

male, "who was [second]-in-command, was now being treated as nothing in command and Mr. Nelson . . . [was] ordered to report to his prior subordinate." (*Id.* at 10 ¶ 28.) Moreover, at a 2016 DPW meeting, Plaintiffs were told Nelson should not be giving orders, despite the fact "[n]o similar sentiments were made about" his predecessor, Serafin. (*Id.* at 10–11 ¶¶ 31–32.) Later, on February 2, 2019, "DeLuca questioned . . . Bell about who is second in command at DPW in [his] absence." (*Id.* at 13 ¶ 45.) "The Township Committee and Business Administrator [also] claimed to be confused about the chain of command regarding DPW's organizational chart and asked Bell to amend and resubmit same." (*Id.* at 14 ¶ 26.) Alves-Viveiros subsequently demoted Nelson and held his "position should not be second in command at DPW, which was contrary to the Township code, ordinance[,] and past practice dating back to February 2016." (*Id.* at 14 ¶ 47.) Plaintiffs sought clarification from Alves-Viveiros regarding her decision. (*See id.* at 15 ¶ 51.) Alves-Viveiros informed Bell "they could meet to discuss [the matter] as management," but Nelson, a "staff member," should not be included. (*Id.*)

Plaintiffs also allege facts pertaining to a September 27, 2019 "rough housing" incident between Riccardi and Juan Serrano, a Hispanic DPW employee. (*Id.* at 17 ¶¶ 57–58.) Following the incident, Alves-Viveiros issued Riccardi a five-day suspension and terminated Serrano's employment.[8] (*Id.* at 17–18 ¶¶ 61–62.) Alves-Viveiros also issued a reprimand against Nelson for refusing to show her a video of the incident despite showing a subordinate employee the same. (*Id.* at 18 ¶ 62.) Furthermore, Bell received a five-day suspension for not reporting the incident. (*Id.* at 18 ¶ 66.) Plaintiffs, therefore, allege they received harsher punishment than their white colleague who "was part of the alleged violent affair." (*Id.* at 18 ¶ 68.)

---

[8] Riccardi's suspension was later reduced to a two-day suspension and loss of three vacation days, while Serrano's termination was changed to a demotion. (*Id.* at 18 ¶¶ 64–65.)

Following the filing of the *Bell I* lawsuit, on October 18, 2019, Alves-Viveiros withdrew Nelson from the third unit of a three-part Certified Public Works Manager course. (*See generally id.* at 19–20 ¶¶ 69–73.) Alves-Viveiros decision was purportedly due to Bell's failure to attend DPW meetings and Plaintiffs' failure to follow the proper procedure for authorizing the course in question. (*Id.* at 19–20 ¶¶ 71–73.) However, Riccardi and another white DPW employee, Michael Horan, attended a conference using the same procedure, but were still authorized to attend. (*Id.* at 20 ¶ 74.) Furthermore, Nelson's predecessor, Serafin, "was able to sign up for these courses with absolutely no issues." (*Id.* at 22 ¶ 75.)

Towards the end of 2019, Plaintiffs began receiving additional admonishments. On November 1, 2019, Nelson received a written reprimand from Alves-Viveiros. (*Id.* at 22 ¶ 77.) On December 11, 2019, Alves-Viveiros informed Bell he had been suspended for fifteen days without pay, purportedly for abuse of time and poor attendance at meetings. (*Id.* at 23 ¶ 78; *see also id.* at 25 ¶¶ 79–81 (further detailing the punishments levied against Plaintiffs).) Additionally, Bell's "[p]erformance evaluations [had] become increasingly worse since [his counsel] appeared on his behalf at the Township Committee [meeting] in December of 2017." (*Id.* at 26 ¶ 83.) On December 27, 2019, Bell received a letter from Alves-Viveiros "stating that upon the completion of his [fifteen]-day suspension[,] Bell would . . . be placed on a Paid Leave of Absence until the completion of an [investigation into an] incident which occurred on December 23, 2019 at the Public Works Facility." (*Id.* at 33 ¶ 115.) Finally, at a January 1, 2020 Township meeting, Bell was not reappointed as DPW Director. (*Id.* at 33 ¶ 116.) On February 3, 2020, Nelson resigned from the DPW. (*Id.* at 69 ¶ 15.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all

inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted

inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III. DECISION[9]

### A. Consolidation

As a threshold matter, in the interests of efficiency and judicial economy, the Court consolidates the *Bell I* and *Bell II* cases. *See Pa. Gen. Ins. v. Landis*, 96 F. Supp. 2d 408, 410 (D.N.J. 2000) (providing that a court may consolidate two actions *sua sponte*); *see also Kamdem-Ouaffo v. Task Mgmt. Inc.*, Civ. A. No. 17-7506, 2018 WL 3360762, at *26 (D.N.J. July 9, 2018) ("The Court will sua sponte consolidate these matters for all purposes. Federal Rule of Civil Procedure 42(a) provides: 'If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions.'"). The Court, however, must determine the operative complaint of this now consolidated matter.

In support of consolidation, Plaintiffs assert they had "filed a new clean Complaint which incorporate[d] *all the* causes of action as well as new cause[s] of action into one Complaint." (*Bell*

---

[9] Because the Motions to Dismiss in *Bell I* and *Bell II* involve identical moving, opposition, and reply briefs (*compare Bell I*, ECF Nos. 56-1, 57, 60, *with Bell II*, ECF Nos. 30-1, 33, 35), the Court will refer only to the briefing of *Bell II* when addressing the parties' arguments.

*I*, ECF No. 37-2 ¶ 5; *Bell II*, ECF No. 5-5 ¶ 5.) Plaintiffs, however, did not explicitly indicate which amended complaint they refer to as the final, "clean" complaint. (*See generally Bell I*, ECF Nos. 37-2, 37-4; *Bell II*, ECF Nos. 5-3, 5-5.) Upon review of the docket, it appears that the *Bell II* Amended Complaint, submitted in both cases (*see Bell I*, ECF No. 37-9; *Bell II*, ECF No. 5), is the most recent and all-encompassing complaint in this matter. For example, the *Bell II* Amended Complaint sets forth the factual allegations and claims of the *Bell II* Original Complaint, as well as additional causes of action. (*Compare Bell II*, ECF No. 5, *with Bell II*, ECF No. 1.) Moreover, as stated previously, the *Bell I* Proposed AC (1) sets forth the factual allegations and claims of the *Bell I* Original Complaint, as well as additional causes of action (*compare Bell I*, ECF No. 37, *with Bell I*, ECF No. 1), and (2) is identical to the *Bell II* Original Complaint (*compare Bell I*, ECF No. 37, *with Bell II*, ECF No. 1). Finally, Defendants' Motions to Dismiss and the accompanying briefing by both parties relate to the *Bell II* Amended Complaint. (*See generally Bell I*, ECF Nos. 56-1, 57, 60; *Bell II*, ECF Nos. 30-1, 33, 35.) The Court, therefore, finds the *Bell II* Amended Complaint (*Bell I*, ECF No. 37-9; *Bell II*, ECF No. 5) to be the operative complaint of this matter.

Accordingly, the Court will **CONSOLIDATE** the *Bell I* and *Bell II* claims into one case under the *Bell I* case number, Civ. A. No. 19-12980. The *Bell II* case is administratively terminated.

## B.   Federal Claims

Plaintiffs' Amended Complaints set forth several federal causes of action. The Court will address each claim in turn.

### 1.   Count Two: Section 1983

In Count Two of their Amended Complaints, Plaintiffs allege violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution under § 1983. (*See generally Bell II*, ECF No. 5 at 37–39 ¶¶ 1–16.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). Because Defendants do not argue their actions were performed outside the color of state law (*see generally* ECF Nos. 30-1, 33), the Court will only address whether Plaintiffs have plausibly alleged violations of a constitutional rights.

### a. First Amendment

First, Plaintiffs allege Defendants violated their First Amendment rights under § 1983. (*See Bell II*, ECF No. 5 at 37.) Plaintiffs assert they have a right to free speech which includes the right to "grieve [and] complain." (*Id.* at 37 ¶ 2.) Plaintiffs maintain that, since they have filed the *Bell I* lawsuit, they have received several written reprimands, suspensions without pay, and poor performance evaluations. (*Id.* at 25–26 ¶¶ 79–81, 83.) According to Plaintiffs, when they and others complain of workplace impropriety, they were retaliated against "in the terms and conditions of their employment[,] which [made] an unusually hostile work environment." (*Id.* at 38 ¶ 10.)

"A cause of action for retaliation for protected conduct under § 1983 is stated upon allegations that (1) the plaintiffs engaged in protected conduct; (2) the plaintiffs were retaliated against; and (3) the protected conduct was a substantial or motivating factor in the retaliation." *Bradshaw v. Twp. of Middletown*, 296 F. Supp. 2d 526, 537 (D.N.J. 2003) (citations omitted).

### i. Defendants DeLuca, Adams, Lembrick, and McGehee and DeLucia

Defendants first argue Plaintiffs' retaliation claim against Defendants DeLuca, Adams, Lembrick, and McGehee should be dismissed because Plaintiffs fail to allege the third element of a retaliation claim, that the protected conduct—*i.e.*, the filing of the *Bell I* lawsuit or any other grievance—was a motivating force behind the retaliation. (*Bell II*, ECF No. 30-1 at 25.) In other words, Defendants assert "there is no suggestion anywhere in the [Amended Complaints] that

14

[DeLuca, Adams, Lembrick, or McGehee] linked the Committee's decision not to renew Bell's employment to the initial [*Bell I*] complaint." (*Id.*) According to Defendants, "[i]ndeed, the [Amended Complaints] do[] not even allege who sat on the [Township] Committee at the time the decision not to renew Bell's employment was taken." (*Id.* at n.15.)

The Court agrees with Defendants and finds Plaintiffs have failed to plausibly allege retaliation against DeLuca, Adams, Lembrick, and McGehee in violation of § 1983. Nowhere in Plaintiffs' Amended Complaints are any non-conclusory, factual allegations that the Township Committee's decision to not renew Bell's employment was in response to or because of the filing of the *Bell I* lawsuit or any other grievance. (*See generally Bell II*, ECF No. 5.) Although Plaintiffs allege the totality of their factual allegations set forth the "planned scheme to retaliate against Plaintiff Bell and cause his termination" (*id.* at 33 ¶ 117), at the motion to dismiss stage, the Court may ignore factually unsupported legal conclusions. *See Iqbal*, 556 U.S. at 679. Without further factual allegations of DeLuca, Adams, Lembrick, and McGehee's conduct, particularly as it pertains to the *Bell I* lawsuit and decision to not renew Bell's employment, the Court cannot find Plaintiffs have plausibly alleged a causal link between Plaintiffs' complaints and these Defendants' alleged retaliatory conduct. Accordingly, Defendants' Motions to Dismiss, as they relate to Count Two's First Amendment claim against DeLuca, Adams, Lembrick, and McGehee, are **GRANTED**, and Count Two, as it sets forth a First Amendment claim under § 1983 against those Defendants, is **DISMISSED WITHOUT PREJUDICE**.

### ii.        Defendant DeLucia

Defendants also note the only allegations in the Amended Complaint concerning DeLucia pertain to (1) "his view that Nelson was not second in command at DPW" (*id.* at 25 (citing *Bell II*, ECF No. 5 at 11 ¶ 34, 14 ¶ 45)), and (2) "his filing [of] grievances on behalf of client Union employees" (*id.*). Defendants maintain "DeLucia is thus primarily named as a defendant for doing

his job advocating for redress of his clients' workplace grievances." (*Id.*) Accordingly, Defendants argue all claims against him should be dismissed. (*Id.*) The Court agrees and cannot discern any conduct in the Amended Complaint that could plausibly allege retaliatory conduct performed by DeLucia. (*See generally Bell II*, ECF No. 5; *see, e.g.*, *id.* at 6 ¶¶ 7–9 (alleging DeLucia sent Bell grievances on behalf of union members); *id.* at 52 ¶ 2 (alleging DeLucia emailed Bell "to inquire about the nature of Nelson's position/title").) Accordingly, Defendants' Motions to Dismiss, as they relate to Count Two's First Amendment claim against DeLucia, are **GRANTED**, and Count Two, as it sets forth a First Amendment claim under § 1983 against DeLucia, is **DISMISSED WITHOUT PREJUDICE**.

### iii.      Defendant Alves-Viveiros

Defendants next argue Plaintiffs merely provide conclusory allegations of retaliatory conduct against Alves-Viveiros. (ECF No. 30-1 at 39.) Defendants maintain "[e]very disciplinary action or adverse workplace event is labeled retaliatory, but the [Amended Complaints] and Exhibits document—and never substantively contradict—each of the grounds for each of the actions taken." (*Id.*) The Court agrees.

Plaintiffs assert that, following the filing of the *Bell I* lawsuit, Alves-Viveiros issued Plaintiffs several written reprimands and suspensions (*Bell II*, ECF No. 5 at 25 ¶¶ 79, 81) and withdrew Nelson from his Certified Public Works Manager course (*id.* at 20 ¶ 72). Plaintiffs allege Alves-Viveiros's punishments amount to retaliation. (*Id.* at 19 ¶ 69; *id.* at 22 ¶ 76.) The Amended Complaints, however, also allege the rationale behind Alves-Viveiros's decisions. For example, Bell's five-day suspension in October 2019 was, according to Alves-Viveiros, for failing to report the incident between Riccardi and Serrano. (*Id.* at 27 ¶ 88.) Furthermore, Bell's fifteen-day suspension in December 2019 was, according to Alves-Viveiros, because of Bell's "use/abuse of time and [Bell's poor] attendance at meetings." (*Id.* at 23 ¶ 78.) Finally, Plaintiffs appear to

concede Nelson's course withdrawal was due to Bell's failure to attend DPW meetings and Plaintiffs' failure to follow the proper authorization procedure, not the *Bell I* lawsuit. (*See id.* at 20 ¶ 72 ("Ms. Alves-Viveiros was upset with Mr. Bell because he did not attend a meeting which she deemed 'required' and in retaliation decided to withdraw Nelson from a course that is pivotal to his career and professional development.").)

Although Plaintiffs allege Alves-Viveiros's justifications were not the true reason for the punishments,[10] the Court is unable to glean anything beyond conclusory allegations in support of such an assertion. (*See, e.g.*, *id.* at 19 ¶ 69 (alleging, without more, that Alves-Viveiros was targeting Nelson "in retaliation for" the filing of the *Bell I* lawsuit); *id.* at 22 ¶ 76.) In *Strategic Environmental Partners, LLC v. Bucco*, 184 F. Supp. 3d 108 (D.N.J. 2016), a retaliation claim was dismissed for similar reasons. There, the court held, in part, that plaintiffs' amended complaint "strongly suggest[ed]" that the defendant's conduct was motivated by factors independent of the plaintiffs' alleged protected activity. *Id.* at 125. Similarly, in *Kundratic v. Thomas*, 407 F. App'x 625, 628 (3d Cir. 2011), the Third Circuit upheld the district court's dismissal of the plaintiff's retaliation claim, finding plaintiff's assertion of a "causal linkage" between his protected conduct and alleged retaliatory arrest by defendants was "too flimsy to warrant credence." *Id.* The Third Circuit noted "nothing suggest[ed] their conduct was propelled by a retaliatory impulse or anything other than their duty to enforce Pennsylvania law." *Id.*

Here, besides Plaintiffs' conclusory allegations, nothing in the Amended Complaints suggests Alves-Viveiros made her decisions because of the *Bell I* lawsuit or any other grievance filed by Plaintiffs. Rather, as the courts in *Bucco* and *Kundratic* held, the Amended Complaints

---

[10] (*See, e.g.*, *id.* at 28 ¶ 94 ("The reprimand was issued *allegedly* because Plaintiff[s] showed 'confidential' video footage [of the Riccardi-Serrano incident] to a DPW laborer . . . and *supposedly* refused to give Ms. Alves-Viveiros access to the camera system at DPW." (emphasis added)).)

suggest Alves-Viveiros was motivated by other factors, including poor meeting attendance and a failure to properly report workplace incidents. (*See Bell II*, ECF No. 5 at 20 ¶ 72; *id.* at 23 ¶ 78; *id.* at 27 ¶ 88.) Therefore, because Plaintiffs "cannot plead facts raising [their] right to relief 'above the speculative level,' this claim must fail." *Kundratic*, 407 F. App'x at 628 (quoting *Phillips*, 515 F.3d at 234). Accordingly, Defendants' Motions to Dismiss, as they relate to Count Two's First Amendment claim against Alves-Viveiros, are **GRANTED**, and Count Two, as it sets forth a First Amendment claim under § 1983 against Alves-Viveiros, is **DISMISSED WITHOUT PREJUDICE**.

### iv.        Defendant Manning

Defendants also argue Plaintiffs' claims against Manning are barred by a two-year statute of limitations. (*Bell II*, ECF No. 30-1 at 25.) Defendants contend "[t]he most recent allegation about Manning . . . describes a January 4, 2018 letter to Bell explaining that Nelson lacked discretion and disregarded Township policy." (*Id.* (citing *Bell II*, ECF No. 5 at 55 ¶ 7).) Defendants maintain the *Bell II* Original Complaint, filed on March 6, 2020, was therefore outside of the two-year window to bring a § 1983 claim. (*Id.* at 26.) Defendants further assert "Plaintiffs cannot claim as to Manning that, for statute of limitations purposes, naming him in the [*Bell II* Amended Complaint] relates back to the May 28, 2019" *Bell I* Original Complaint "because they cannot satisfy Rule 15(c)(3)(B)—they cannot claim Manning should have known he would have been sued but for a mistake concerning the identity of the proper party." (*Id.* (internal quotation marks omitted).)

The Court declines, at the motion to dismiss stage, to dismiss Plaintiffs' First Amendment claims against Manning on statute of limitations grounds. *See Crump v. Passaic Cnty.*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015) ("[A] statute of limitations is an affirmative defense not normally decided on a motion to dismiss."). However, the Court finds Defendants' general argument

regarding the conclusory nature of Plaintiffs' retaliation claim applies equally to Manning and merits dismissal of the First Amendment claim against him. Defendants argue "Plaintiffs' allegations of retaliation are no less flimsy and conclusory than their allegations of disparate treatment and racial animus." (*Bell II*, ECF No. 30-1 at 39; *see also id.* at 20 ("The [Amended Complaints are] devoid of non-conclusory allegations suggesting that Defendants acted with racial animus or intent to retaliate.").) The Amended Complaints allege only one action taken by Manning following Plaintiffs' counsel's December 2017 appearance before the Township Council suggesting disparate treatment. There, Plaintiffs allege Manning "sent a letter to Mr. Bell accusing Nelson of lacking direction, focus, and not caring about Township policy, and essentially Nelson's job." (*Bell II*, ECF No. 5 at 55 ¶ 7.) Plaintiffs maintain this letter "was retaliatory considering what occurred only a few days before at the Township Committee Meeting." (*Id.*) Without more, however, the Court cannot find Plaintiffs' have set forth any plausible, non-conclusory allegations against Manning suggesting retaliation. Accordingly, Defendants' Motions to Dismiss, as they relate to Count Two's First Amendment claim against Manning, are **GRANTED**, and Count Two, as it sets forth a First Amendment claim under § 1983 against Manning, is **DISMISSED WITHOUT PREJUDICE**.

### v.       The Township

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). "Under *Monell*, a plaintiff shows that a policy existed when a decisionmaker possess[ing] final authority to establish municipal policy . . . issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation marks and citations omitted). "A plaintiff may establish a custom, on the other

hand, by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 155–56 (internal quotation marks and citation omitted). Although they do not explicitly set forth a *Monell* claim, Plaintiffs appear to allege the Township has a policy or custom of retaliation against certain employees who raise hostile work environment concerns. (*See, e.g.*, *Bell II*, ECF No. 5 at 38 ¶ 10; *see also id.* at 33 ¶ 3 (alleging Defendants DeLuca, Alves-Viveiros, DeLucia, Lembrick, and McGehee were "all management officials and employers with the Township . . . who at all times mentioned . . . were performing their supervisory functions as agent[] employees for Defendant Township.").) Defendants, however, argue the Amended Complaints "do[] not allege any express policy or unwritten law in the Township that . . . encouraged retaliation." (*Bell II*, ECF No. 30-1 at 29.) Without such allegations, Defendants argue Plaintiffs' retaliation claim against the Township must be dismissed. (*Id.*)

Here, the Court finds *Weston v. Passaic Cnty.*, Civ. A. No. 14-62, 2014 WL 2094095 (D.N.J. May 20, 2014), instructive. In *Weston*, the court dismissed a municipal liability retaliation claim for several reasons, including: (1) plaintiff's failure to allege "that similar acts of retaliation ha[d] ever occurred in the County"; (2) plaintiff's failure to allege "a policy of retaliation"; and (3) plaintiff's failure to allege he "was retaliated against by someone with final policymaking authority." *Id.* at *4. Likewise, here, apart from mere conclusory allegations, Plaintiffs do not allege similar, post-grievance retaliation had occurred within the Township, nor do they set forth enough factual allegations to plausibly allege a policy of retaliation. (*See generally Bell II*, ECF No. 5.) Furthermore, Plaintiffs fail to allege any individual with final decision-making authority retaliated against them. (*Id.*) Rather, Plaintiffs assert individual Defendants such as Alves-Viveiros (*id.* at 19 ¶ 69) and Manning (*id.* at 55 ¶ 7) retaliated against them for their lawsuit and grievances. Such allegations, however, fail to plausibly allege the policy or custom necessary for a municipal

liability claim under § 1983. *See Natsis v. Turner*, Civ. A. No. 13-7269, 2017 WL 945081, at *8 (D.N.J. Mar. 10, 2017) ("Plaintiffs' remaining allegations state in broad, sweeping language that '[d]efendants' (as opposed to Mayor Turner specifically) retaliated against [p]laintiffs . . . to suppress their First Amendment rights. Such allegations do not plausibly allege a policy or custom of retaliatory conduct . . . ."). Accordingly, Defendants' Motions to Dismiss, as they relate to Count Two's First Amendment claim against the Township, are **GRANTED**, and Count Two, as it sets forth a First Amendment claim under § 1983 against the Township, is **DISMISSED WITHOUT PREJUDICE**.

### b.      Fourth Amendment

Plaintiffs also allege their Fourth Amendment rights were violated under § 1983. (*Bell II*, ECF No. 5 at 37.) The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also provides "no [w]arrants shall issue, but upon probable cause." *Id.* Defendants argue Plaintiffs' Amended Complaints "contain[] no allegation[s] of any search or seizure at all," and, therefore, any claims setting forth a violation of the Fourth Amendment should be dismissed. (*Bell II*, ECF No. 30-1 at 20–21.) The Court agrees. Nowhere in Plaintiffs' Amended Complaints are allegations concerning the search or seizure of either Plaintiffs' person, house, papers, or effects. (*See generally Bell II*, ECF No. 5.) Plaintiffs, therefore, have failed to plausibly allege a violation of the Fourth Amendment under § 1983. Accordingly, Defendants' Motions to Dismiss, as they relate to Plaintiffs' Fourth Amendment claim under § 1983, are **GRANTED**, and Count Two, as it sets forth a violation of the Fourth Amendment under § 1983, is **DISMISSED WITHOUT PREJUDICE**.

### c.     Fifth Amendment

Next, Plaintiffs allege a violation of their Fifth Amendment rights under § 1983. (*Id.* at 37.) The Fifth Amendment, however, "provides that the *federal* government may not deprive a person of 'life liberty, or property.'" *GEOD Corp. v. N.J. Transit Corp.*, 678 F. Supp. 2d 276, 288 (D.N.J. 2009) (citing U.S. Const. amend. V). "Thus, it is axiomatic that a plaintiff seeking relief pursuant to the Fifth Amendment must complain of federal government action." *Id.* (internal quotation marks and citations omitted). Here, Defendants are Township employees and the Township itself. (*See Bell II*, ECF No. 5 at 3 ¶¶ 2–3.) Plaintiffs, therefore, have failed to set forth claims against federal officials or allege federal government action. (*See generally id.*) Accordingly, Defendants' Motions to Dismiss, as they relate to Plaintiffs' Fifth Amendment claim under § 1983, are **GRANTED**, and Count Two, as it sets forth a violation of the Fifth Amendment under § 1983, is **DISMISSED WITHOUT PREJUDICE**.

### d.     Fourteenth Amendment

Finally, Plaintiffs allege a violation of the Fourteenth Amendment's substantive and procedural due process and equal protection rights under § 1983. (*Id.* at 37.)

### i.     Procedural Due Process

"To state a claim for violation of procedural due process, Plaintiffs must allege that: (1) they were deprived of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, and property; and (2) that the procedures available did not provide due process of the law." *ASAH v. N.J. Dep't of Educ.*, 330 F. Supp. 3d 975, 1011 (D.N.J. 2018) (internal quotation marks and citation omitted). Procedural due process, however, "does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). Rather, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must,

instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Plaintiffs allege they were entitled to the compensation and benefits of their respective titles. (*See Bell II*, ECF No. 5 at 40 ¶¶ 3–4; *id.* at 49 ¶ 7.) Moreover, Plaintiffs assert that, under a New Jersey Legislature Enactment, Bell's five years as DPW Director provided him with tenure. (*Id.* at 86 ¶ 15.) Plaintiffs appear to be referring to N.J. Stat. Ann. § 40:9-154.6 (*see Bell II*, Pls.' Reply Br., ECF No. 35-1 at 12 ("Defendants correctly cite to §40A:9-154-6 which is a statute that creates the possibility of tenure for Superintendents of Public Works."), which provides:

> A person holding office, position or employment as full-time municipal superintendent of public works who has held the office, position or employment continuously for 5 years or more shall continue to hold the office, position or employment, notwithstanding he is serving for a fixed term, during good behavior and efficiency and shall not be removed therefrom for political or other reasons except for good cause, upon written charges filed with the municipal clerk and after a public, fair and impartial hearing . . . .

N.J. Stat. Ann. § 40A:9-154.6. According to Plaintiffs, "[h]aving tenure requires an employer to hold a 'Fair Hearing' with opportunity to confront and cross-examine witnesses." (*Bell II*, ECF No. 5 at 86 ¶ 16.) By failing to provide Bell with such a hearing, Plaintiffs allege Defendants violated his procedural due process rights. (*Id.* at 86 ¶ 17.)

Defendants argue Plaintiffs are at-will Township employees with no procedural rights to employment benefits. (*Bell II*, ECF No. 30-1 at 28.) Moreover, Defendants assert the statute Plaintiffs rely on "only creates a property interest if 'the governing body of the municipality shall first pass an ordinance authorizing the tenure of the office.'" (*Id.* (quoting N.J. Stat. Ann. § 40A:9-154.6).) According to Defendants, "Plaintiffs do not identify such an ordinance, and Defendants are not aware of any," and, therefore, Plaintiffs' procedural due process claim must fail. (*Id.*) In opposition, Plaintiffs argue they "may or may [not] have a property interest," and concede the

Township has not passed an ordinance establishing Bell's tenure. (*See Bell II*, ECF No. 35-1 at 12

("There is no dispute that the Defendant Committee did not pass such an ordinance for this Black

Man's Directorship.").) In addition to Plaintiffs' concession on this issue, the Court also finds

Plaintiffs' Amended Complaints are devoid of any reference to a specific Township ordinance

authorizing the tenure of the DPW Director. (*See generally Bell II*, ECF No. 5.) Accordingly, the

Court finds Plaintiffs have failed to plausibly allege they have a legitimate claim of entitlement to

their employment benefits. Because such entitlement is necessary for a procedural due process

claim, *see Gonzales*, 545 U.S. at 756, Plaintiffs' claim fails.

### ii.        Substantive Due Process

"To establish a substantive due process claim, a plaintiff must prove [a] particular interest

at issue is protected by the substantive due process clause and the government's deprivation of that

protected interest shocks the conscience." *Chainey v. Street*, 523, F.3d 200, 219 (3d Cir. 2008)

(citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400–02 (3d Cir.

2003)). "Due process protects against arbitrary action, and 'only the most egregious official

conduct can be said to be arbitrary in the constitutional sense.'" *Clayworth v. Luzerne Cnty., Pa.*,

513 F. App'x 134, 136 (3d Cir. 2013) (quoting *Chainey*, 523 F.3d at 219). "While the meaning of

the ['shocks the conscience'] standard varies depending on the factual context, merely alleging an

improper motive is insufficient, even where the motive is unrelated to the merits of the underlying

action." *Chainey*, 523 F.3d at 220 (citing *United Artists*, 316 F.3d at 400). "Whether an incident

'shocks the conscience' is a matter of law for the courts to decide." *Benn v. Universal Health Sys.*,

371 F.3d 165, 174 (3d Cir. 2004).

Defendants argue "[t]here is no conduct alleged in the [Amended Complaints] that comes

close to clearing the[] high bars" of shocking the conscience. (*Bell II*, ECF No. 30-1 at 31.)

Defendants maintain the workplace conflicts alleged by Plaintiffs "cannot plausibly be construed

as 'severe and pervasive conduct' that was 'hostile and abusive,' much less conduct 'so intolerable that a reasonable person' could not endure it or conduct that 'shocks the conscience.'" (*Id.*)[11] The Court agrees. "Conduct that shocks the conscience includes corruption, self-dealing, ethnic bias, or interference with an otherwise protected constitutional activity." *Bucco*, 184 F. Supp. 3d at 129 (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004)). As stated previously in this Opinion, the non-conclusory allegations of the Amended Complaints suggest any adverse actions taken by Defendants against Plaintiffs were due to factors other than the filing of the *Bell I* lawsuit or any grievance. (*See, e.g.*, *Bell II*, ECF No. 5 at 20 ¶ 72; *id.* at 23 ¶ 78; *id.* at 27 ¶ 88.) Without more, Plaintiffs' current legal conclusions regarding their substantive due process rights (*see, e.g.*, *id.* at 34 ¶ 5; *id.* at 36 ¶ 15; *id.* at 37 ¶ 3) fail to meet the "high bar" of what shocks the conscience. *Bucco*, 184 F. Supp. 3d at 129. Accordingly, the Court finds Plaintiffs have failed to plausibly allege a substantive due process violation.

### iii.        Equal Protection

Under the Fourteenth Amendment, states are barred from "deny[ing] any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Therefore, the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Id.* (citations omitted). "In other words, they must demonstrate that

---

[11] Although not explicitly cited, Defendants appear to be quoting *Shepherd v. Hunterdon Developmental Center*, 803 A.2d 611 (N.J. 2002) and *Rivkin v. Dover Township Rent Leveling Board*, 671 A.2d 567 (N.J. 1996), both of which are previously cited in their opposition. (*Bell II*, ECF No. 30-1 at 30–31.)

they received different treatment from that received by other individuals *similarly situated*." *Id.* (citations omitted).

Count Two sets forth an equal protection claim under § 1983. (*See Bell II*, ECF No. 5 at 37 ¶ 3.) Although haphazardly pled, Plaintiffs appear to allege minority DPW employees are not provided with the same protections after filing workplace grievances as their white counterparts. (*Id.* at 35–36 ¶ 13 ("Defendants have used [legislation and regulations] to benefit white employees to the detriment of Plaintiffs and non-white employees and those who complain about racism and actions of Defendants which are against the public policy of the state."); *see also id.* at 38 ¶ 10 ("When Plaintiffs (and others) complain, it is Plaintiffs and complainers who are given retaliatory actions in the terms and conditions of their employment which make an unequally hostile work environment, so hostile that any reasonable non-white should not have to endure.").)

Defendants argue Plaintiffs fail to adequately demonstrate they received treatment different from similarly situated white DPW employees. (*Bell II*, ECF No. 30-1 at 35–36.) Defendants maintain Plaintiffs' disparate treatment allegations are "based on vague, anecdotal comparisons, [and] do not withstand scrutiny because the comparisons are too cursory and imprecise." (*Id.*) The Court agrees. Plaintiffs allege they "have submitted multiple in-house complaints of disparate and discriminatory treatment." (*Bell II*, ECF No. 5 at 34–35 ¶ 9.) Plaintiffs appear to further assert, in a conclusory manner, that "whites are treated better" when filing such complaints. (*Id.*) Such conclusory statements, however, are insufficient to plausibly allege a cause of action. Moreover, the other grievances Plaintiffs allege to have received better treatment all include complaints outside the scope of discrimination. (*See, e.g.*, *id.* at 6 ¶¶ 7–9 (grievance regarding reprimand for refusing to enroll in professional class); *id.* at 8–9 ¶ 20 (grievance regarding pay raise).) "Persons are similarly situated under the Equal Protection Clause when they are alike '*in all relevant aspects*.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*,

505 U.S. 1, 10 (1992)) (emphasis added). Because Plaintiffs fail to allege any non-conclusory facts pertaining to similarly situated DPW employees who had their complaints of discrimination adequately heard, their equal protection claim fails.

The Court, therefore, finds Plaintiffs have failed to plausibly allege a violation of the Fourteenth Amendment's due process and equal protection clauses. Accordingly, Defendants' Motions to Dismiss, as they relate to Plaintiffs' Fourteenth Amendment claim under § 1983, are **GRANTED**, and Count Two, as it sets forth a violation of the Fourteenth Amendment under § 1983, is **DISMISSED WITHOUT PREJUDICE**.

### 2.      Count Two: 42 U.S.C. §§ 1981, 1985, 1986, 1988

In addition to a claim under § 1983, Plaintiffs allege violations of sections 1981, 1985, 1986, and 1988. (*Bell II*, ECF No. 5 at 37.) Defendants argue Plaintiffs' claims under sections 1981 and 1988 "must be dismissed because these statutes do not create private rights of action." (*Bell II*, ECF No. 30-1 at 21 (citing *McGovern v. City of Phila.*, 554 F.3d 114, 121 (3d Cir. 2009); *Galicki v. New Jersey*, Civ. A. No. 14-169, 2015 WL 3970297, at *6 (D.N.J. June 29, 2015)).) Defendants also assert Plaintiffs' § 1985 should be dismissed because "as a municipal entity and its officials, Defendants are 'a single entity that cannot conspire with itself.'" (*Id.* at 22 (quoting *Holley v. Port Auth. of N.Y. & N.J.*, Civ. A. No. 14-7534, 2017 WL 4082825, at *19 (D.N.J. Sept. 15, 2017)).) Defendants maintain "Plaintiffs could only allege a § 1985(3) conspiracy claim if the [i]ndividual Defendants were alleged to be 'acting in a personal, as opposed to official, capacity, or if independent third parties [were] alleged to have joined a conspiracy.'" (*Id.* (quoting *Robinson v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988)).) Because "[t]here are no such allegations in the [Amended Complaints]" that Defendants acted outside of their official capacity, Defendants argue Plaintiffs' § 1985 claim should be dismissed. (*Id.*) Finally, Defendants contend Plaintiffs' § 1986 claim should be dismissed because "no claim can be maintained under

§ 1986 unless a cause of action has been established under § 1985." (*Id.* (quoting *Evans v. Port Auth. of N.Y. & N.J.*, Civ. A. No. 06-3239, 2007 WL 3071808, at *5 (D.N.J. Oct. 18, 2007)).)

The Court agrees with Defendants' well-reasoned arguments and finds Plaintiffs' claims under sections 1981, 1985, 1986, and 1988 must be dismissed. In *McGovern*, the Third Circuit affirmed the dismissal of a § 1981 claim and held "because Congress [never] explicitly created a remedy against state actors under § 1981(c), . . . 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" 554 F.3d at 120–21 (quoting *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 (1989)). Next, in *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973), the Supreme Court held § 1988 "is intended to complement the various acts which do create federal causes of action for the violation of civil rights." *See also Galicki*, 2015 WL 3970297, at *6. Furthermore, under § 1985, a plaintiff "cannot maintain a conspiracy claim against" actors within the same municipal entity. *Baldwin v. Gramiccioni*, Civ. A. No. 16-1675, 2017 WL 120643, at *10 (D.N.J. Jan. 11, 2017) (collecting cases). Finally, "without a conspiracy adequately alleged [under Section 1985], [a] claim under Section 1986 must also be dismissed because it is derivative of [the] claim under Section 1985(3)." *Id.* at *11 (collecting cases).[12] Accordingly, Defendants' Motions to Dismiss, as they relate to Plaintiffs' claims under §§ 1981, 1985, 1986, and 1988, are **GRANTED**, and Count Two, as it sets forth violations of these statutes, is **DISMISSED WITHOUT PREJUDICE**.

### 3.      Counts Three, Seven, and Eight

Counts Three, Seven, and Eight of Plaintiffs' Amended Complaints also claim violations of §§ 1981, 1983, 1985, 1986, and 1988. (*See Bell II*, ECF No. 5 at 39–40, 43–51.) The Court,

---

[12] The Court also notes that, because Plaintiffs have failed to set forth a claim pursuant to § 1983, their "federal claims pursuant to §§ 1985, 1986, and 1988 must also fail." *Bland v. Winant*, Civ. A. No. 03-6091, 2007 WL 1237846, at *6 (D.N.J. Apr. 27, 2007).

however, cannot discern how these statutory claims are distinguishable from those under Count Two. Accordingly, for reasons previously stated, Defendants' Motions to Dismiss, as they relate to Plaintiffs' claims under §§ 1981, 1983, 1985, 1986, and 1988, are **GRANTED**, and Counts Three, Seven, and Eight, as they set forth violations of these statutes, are **DISMISSED WITHOUT PREJUDICE**.

### C.    State Law Claims

Finally, although *Bell I* and *Bell II* have been brought pursuant to the Court's federal question subject matter jurisdiction (*Bell II*, ECF No. 5 at 1–2 ¶ 2), Plaintiffs' Amended Complaints set forth a bevy of supplemental state law claims based on statutory and common law causes of action (*see generally id.* at 33–37, 39–86). The Court, however, has dismissed all of Plaintiffs' federal claims. Accordingly, the Court **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Bland*, 2007 WL 1237846, at *6.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (*Bell I*, ECF No. 56; *Bell II*, ECF No. 30) are **GRANTED**. An appropriate order follows.

Date: July 30, 2021                                     */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**